IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DOUGLAS DYNAMICS, LLC,

               Plaintiff,

v.

MEYER PRODUCTS, LLC,

               Defendant.

ORDER

14-cv-886-jdp

---

Pursuant to the pretrial conference order, Dkt. 20, plaintiff has submitted documentation that it contends establishes standing because it is the owner, by assignment, of the patent-in-suit, U.S. Patent No. 6,928,757. Dkt. 25 and Dkt. 26. Defendant disputes plaintiff's standing, alleging that the plaintiff did not actually own the patent-in-suit when this case was filed. Dkt. 27.

Defendant's argument centers on the inventors' original assignment in January 2001 to their employer, Douglas Dynamics, LLC[1] Dkt. 26-2. This assignment document has a problem: although the recitals express the parties' intent to assign the patent to Douglas Dynamics, the grant clause says that the patent is assigned to "Batesville Services, Inc." According to defendant, the grant clause is unambiguous and once this assignment document was executed, Batesville Services owned the patent-in-suit. During the course of this case, on June 1, 2015, Batesville Services executed a *nunc pro tunc* quit claim deed that purports to transfer any interest that Batesville Services has in the patent-in-suit to Douglas Dynamics, effective January 21, 2001. Dkt. 26-3. But such a *nunc pro tunc* assignment made after the

---

[1] The original assignee, "Douglas Dynamics, L.L.C.," is actually a predecessor to plaintiff, despite having the same name. A corporate reorganization resulted in another assignment of the patent-in-suit, but that transaction is not material to the standing issue.

commencement of litigation does not establish plaintiff's standing when the suit was commenced. *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015) (citing *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). So, according to defendant, when this suit was filed, Batesville Services owned the patent-in-suit and plaintiff did not have standing.

The court is not persuaded. The lynchpin of defendant's argument is that the January 2001 assignment document unambiguously assigns the patent-in-suit to Batesville Services, and thus the court cannot consider any extrinsic evidence of the parties' intent. Dkt. 27, at 8-9. There are two problems with defendant's argument.

First, the January 2001 assignment is ambiguous because there is a conflict between the recitals and the granting clause that simply cannot be reconciled. The goal of contract interpretation is to ascertain the intent of the parties. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶ 34. If a contract is clear and unambiguous, the language of the contract governs. *Id*. at ¶ 35. But if the contact is ambiguous, the court may consider extrinsic evidence to determine the intent of the parties. *Id*. at ¶ 36. Defendant relies on older Wisconsin cases holding that in construing deeds of real property, an unambiguous granting clause will control over a contrary expression in the introductory part of the deed. *See, e.g., Weber v. Nedin*, 210 Wis. 39, 242 N.W. 487, 488 (Wis. 1932), *on reh'g*, 210 Wis. 39, 246 N.W. 307 (Wis. 1933). This principle may be sound as a canon of construction of real estate deeds, where extrinsic evidence of the parties' intent may not be available. But defendant does not explain how these cases would overcome the well-established principle that a court may consider extrinsic evidence to resolve ambiguities in a written agreement.

The second problem with defendant's argument is that extrinsic evidence is always admissible to show mutual mistake. *Badger Sav. Bldg. & Loan Ass'n v. Mut. Bldg. & Sav. Ass'n*, 230 Wis. 145, 283 N.W. 466, 469 (1939) ("Parol evidence to establish fraud or mutual mistake in actions for reformation is universally admitted. If it were not, these remedies would be wholly unenforcible."). Plaintiff's argument is that the inventors and Douglas Dynamics made a mutual mistake because none of them intended that Batesville Services would acquire the patent-in-suit.

The extrinsic evidence makes the intent of the parties crystal clear. At the time they made their invention, the five inventors worked for Douglas Dynamics, Dkt. 29-3, ¶ 4, and they were under a contractual obligation to assign their invention to Douglas Dynamics, *id*. at ¶ 5. The error in the January 2001 assignment was discovered only few months later, and in August and September 2001, the five inventors executed a new assignment of their invention to Douglas Dynamics, which Douglas Dynamics promptly recorded in the Patent Office. Dkt. 26-4 and Dkt. 29-3. The parties do not explain who Batesville Services is, but its website indicates that that is an Indiana-based supplier of goods and services to the funeral industry. A declaration from one of the inventors confirms that none of the inventors had any relationship whatsoever to Batesville Services. Dkt. 29, ¶ 6. The *nunc pro tunc* quit claim from Batesville Services is immaterial to the standing issue, but it cleans up the ownership record to prevent future baseless challenges to Douglas Dynamics' ownership of the '757 patent.

One final comment: The court sees nothing underhanded about plaintiff's suggestion that the parties stipulate to the fact that plaintiff has standing. In light of the obvious problem with the January 2001 assignment document, the strength of the extrinsic evidence,

and the prompt correction of the erroneous assignment, a stipulation would have been eminently reasonable.

The court concludes that plaintiff has established its standing to pursue this suit.

Entered August 18, 2015.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge